The SANDUSKY COUNTY
DEMOCRATIC PARTY,
et al., Plaintiff

v.

J. Kenneth BLACKWELL, Defendant

No. 3:03 CV 7582.

United States District Court,
N.D. Ohio,
Western Division.

Oct. 20, 2004.

Fritz Byers, Michael P. O'Grady, Richard M. Kerger, Kerger & Kerger, Toledo, OH, Rory P. Callahan, Cloppert Latanick Sauter & Washburn, Columbus, OH, Joseph V. McNamara, Cooper & Walinski, Richard S. Walinski, Cooper & Walinski, Joseph J. Allotta, Allotta, Farley & Widman, Toledo, OH, for The Sandusky County Democratic Party, The Ohio Democratic Party, Farm Labor Organizing Committee, Inc., North Central Ohio Building and Construction Trades Council, Local 245 International Brotherhood of Electrical Workers, Plaintiffs.

Richard G. Lillie, Benesch Friedlander Coplan & Aronoff, Cleveland, OH, for J. Kenneth Blackwell, in his Official capacity as Secretary of State, Defendant.

James P. Silk, Jr., Theodore M. Rowen, Truman A. Greenwood, Spengler Nathanson, Toledo, OH, for Gregory L. Arnold, Glenn A. Wolfe, Thomas W. Noe, Intervenors.

## ORDER

CARR, District Judge.

This is a suit under 42 U.S.C. § 1983 to enforce provisions of the Help America Vote Act, Pub.L. 107–252, Title III, § 302, 116 Stat. 1706 (codified at 42 U.S.C. § 15301, et seq.) (HAVA). Plaintiffs are the Ohio Democratic Party, the Sandusky County, Ohio, Democratic Party, and three labor organizations, all of whom sue as associational representatives of their members. The defendant is J. Kenneth Blackwell, Ohio Secretary of State.

In prior proceedings in this case, I have: 1) held that Directive 2004–33, issued by the defendant on September 16, 2004, violate the provisional voting provisions of HAVA, 42 U.S.C. § 15482, and issued injunctive relief requiring the defendant to file a HAVA-compliant directive with this Court (Doc. 26); 2) denied the defendant's

motion to stay the mandate of the injunction pending his appeal of the injunction (Doc. 35); and 3) issued a supplemental injunction directing defendant to file alternative versions of HAVA-compliant directives (Doc. 39).

Defendant filed a revised directive on October 18, 2004. Pending is plaintiffs' motion for immediate relief. (Doc. 40). That motion contends that the defendant has failed to comply with this Court's order to file a HAVA-compliant revised directive.

Plaintiffs' motion asks that, in addition to finding non-compliance with the injunction, I order the defendant to issue, by not later than noon, October 20, 2004, a directive that complies with HAVA and the Court's ruling of October 14, 2004.

For the reasons that follow, I agree with the plaintiffs that the defendant's submission in response to the injunction that he file a HAVA-compliant directive fails to comply with that order. I agree also that immediate relief is necessary, though the form of relief that will be granted differs in some respects from that requested by the plaintiff.

### Background

The exigencies requiring the relief being ordered herein are due to the failure of the defendant to fulfill his duty not only to this Court, as its injunction directed him to do, but more importantly, to his failure to do his duty as Secretary of State to ensure that the election laws are upheld and enforced.

The primary cause of the exigency is the defendant's failure to have issued Directive 2004–33 relating to provisional voting for nearly twenty-three months after HAVA's enactment. As noted in the order granting plaintiffs' motion for a preliminary injunction, the defendant himself acknowledged the need to bring Ohio's antiquated provisional voting laws into conformity with HAVA. In Ohio's HAVA State Plan (State Plan), 69 Fed.Reg. 14879, 14895 (March 24, 2004), authored by Blackwell in June, 2003, he assured Ohio's voters that he would "continue to refine *and expand* the scope of provisional voting in the state *to comply with the spirit, intent and letter*" of HAVA. *Id.* (Emphasis added).

Despite Blackwell's assurance in the State Plan that he "embrac[ed] the concept" of "accommodat[ing] *every voter* who, for whatever reason, does not appear on the certified list of registered voters in any jurisdiction of the state," *id.* at 34 (emphasis added), he did not publish any regulations or directives relating to provisional voting under HAVA until issuing Directive 2004–33 on September 16, 2004—about six weeks before the November 2, 2004, presidential election.

Blackwell has never explained why he waited so long to do anything to bring Ohio's provisional election procedures into line with federal law.

At no point during these proceedings has Blackwell contended that HAVA's statement of the right to vote provisionally and what must be done to ensure that right is complex, unclear, or administratively challenging. Nor could he make such contention: the statute is remarkably clear, cogent, and succinct. With regard to the provisions at issue in this case generally, and plaintiffs' pending motion in particular, the statute states:

> If an individual declares that such individual is a registered voter in the jurisdiction in which the individual desires to vote and that the individual is eligible to vote in an election for Federal office, but the name of the individual does not appear on the official list of eligible voters for the polling place or an election official asserts that the individual is not eligible to vote, such individual shall be permitted to cast a provisional ballot as follows:

(1) An election official at the polling place shall notify the individual that the individual may cast a provisional ballot in that election.

(2) The individual shall be permitted to cast a provisional ballot at that polling place upon the execution of a written affirmation by the individual before an election official at the polling place stating that the individual is—

    (A) a registered voter in the jurisdiction in which the individual desires to vote; and

    (B) eligible to vote in that election.

(3) An election official at the polling place shall transmit the ballot cast by the individual or the voter information contained in the written affirmation executed by the individual under paragraph (2) to an appropriate State or local election official for prompt verification under paragraph (4).

(4) If the appropriate State or local election official to whom the ballot or voter information is transmitted under paragraph (3) determines that the individual is eligible under State law to vote, the individual's provisional ballot shall be counted as a vote in that election in accordance with State law.

    (5) (A) At the time that an individual casts a provisional ballot, the appropriate State or local election official shall give the individual written information that states that any individual who casts a provisional ballot will be able to ascertain under the system established under subparagraph (B) whether the vote was counted, and, if the vote was not counted, the reason that the vote was not counted.

    (B) The appropriate State or local election official shall establish a free access system (such as a toll-free telephone number or an Internet website) that any individual who casts a provisional ballot may access to discover whether the vote of that individual was counted, and, if the vote was not counted, the reason that the vote was not counted.

42 U.S.C. § 15482(a).

In the opening line of Directive 2004–33, which plaintiffs have successfully challenged for its noncompliance with HAVA's provisional voting requirements, Blackwell stated, "All boards of elections must instruct their pollworkers on the provisional voting procedures authorized by state *and federal* law." (Emphasis added). Despite that acknowledgment of his duty to instruct Ohio's election officials about their obligations under federal law (and HAVA is the federal law regarding provisional voting), Blackwell described not a single provision of federal law generally, much less HAVA in particular, in Directive 2004–33.

The effect of Blackwell's failure to mention, much less discuss HAVA, was to leave the intended readers of Directive 2004–33—Ohio's election officials—entirely unaware that there even is a federal law relating to provisional voting. Such reader is left entirely without guidance on how to apply that law, though it has been on the books and in effect for two years.

Instead of describing the requirements of HAVA in Directive 2004–33, Blackwell gave a narrative description of Ohio's pre-HAVA, outdated provisional voting procedures. Those procedures indisputably fail to extend the right to vote provisionally, as mandated by HAVA, to all Ohio voters who are entitled under HAVA to do so.

By failing to discuss HAVA, on the one hand, and describing only outmoded, no longer applicable procedures on the other, Blackwell, in all likelihood, left Ohio's election officials more confused than they would have been if the directive had not issued.

As a result of his failure to do the job he admitted in Directive 2004–33 must be done—instructing Ohio's "pollworkers on the provisional voting procedures authorized by state and federal law," Blackwell, Ohio's chief election official, would, if Directive 2004–33 were to have been implemented, have disenfranchised large numbers of Ohio voters on November 2, 2004.

To avoid this result, the injunction that issued on October 14, 2004, in addition to restraining implementation of Directive 2004–33, directed Blackwell: to "forthwith, in compliance with this Order, prepare, and, not later than 4 p.m., Monday, October 18, 2004, file with this Court a Directive that complies with the Help America Vote Act, and shall otherwise be consistent with this Order."

Blackwell's "Proposed New Directive No. 2004 -," submission in response to this Court's order that he file a HAVA-complaint revised directive, states:

**Proposed New Directive No. 2004–**

October 18, 2004

**ALL COUNTY BOARDS OF ELECTIONS**

The ability of Ohio voters to cast a provisional ballot existed prior to the enactment of the Help America Vote Act of 2002 (HAVA), as noted in Directive 2004–33. Provisional balloting as mandated by HAVA does not, however alter Ohio's long-standing precinct-based voting system, as defined in R.C. 3503.01. HAVA requires states to provide voters with a provisional ballot if certain conditions are met, as outlined below. The validity of such votes shall be determined in accordance with state law eligibility requirements before any vote is counted.

This Directive provides guidance to County Boards of Elections regarding how provisional ballots must be issued and cast. All poll workers should receive training on the contents of this Directive and be advised to contact your offices if they need additional information or have questions related to provisional voting. This Directive, or a summary thereof, should be included in each poll worker handbook and be available to poll workers as a resource on Election Day.

No voter should be turned away from the polling place without being given an opportunity to cast a vote; however, all efforts should be made to direct the voter to the proper precinct, the board of elections, and any regional centers designated by the board of elections, in order for his or her vote to be counted.

For Voters Whose Names DO NOT Appear in the Official Poll Book:

Pursuant to Section 302 of HAVA, if a person declares he or she is a registered voter qualified to vote at that precinct but his or her name is not on the official list of eligible voters ("Roster"), that person may vote a provisional ballot. Any voter who does not appear on the Roster because he or she has moved or changed names should vote provisionally. . Casting a Provisional Ballot:

Provisional Ballots shall be (a different color/stamped with the word "Provisional" in large letters). Prior to voting the provisional ballot, the elector shall be required to sign an affidavit stating the following:

I do solemnly swear or affirm that my name is _____, that my date of birth is _____, and at the time that I registered I resided at _____ in the City of _____ in _____ County of the State of Ohio and that this is the only ballot that I cast in this election, except that if I have already cast an absentee ballot, such ballot will be voided and this ballot

shall count if the county board of elections official verifies my eligibility. I understand that pursuant to Ohio law, if I am voting in a precinct other than my assigned precinct, my vote may not be counted.

*Signature of Voter*

*Current Address*

After the provisional ballot has been cast, the individual shall place it in a secrecy envelope. The individual shall place the secrecy envelope in the provisional ballot envelope and shall place his signature on the front of the provisional ballot envelope. The judge of elections shall affix the voter's completed affidavit to the provisional ballot envelope. All provisional ballots shall remain sealed in their provisional ballot envelopes for return to the county board of elections. (Doc. 37).

This submission does not comply with the command of the injunction. Blackwell has failed to comply with this court's order to submit a HAVA-compliant revised directive in several respects.

First, the Proposed Directive fails to inform Ohio's election officials clearly and specifically that, pursuant to § 15482(a), any individual whose name "does not appear on the official list of eligible voters" or who is told by an election official that he or she "is not eligible to vote ... *shall be permitted to cast a provisional ballot.*" (Emphasis added).

Instead, the Proposed Directive expressly limits its scope to "Voters Whose Names DO NOT Appear in the Official Poll Book." It likewise limits expressly the right to vote provisionally to "a person [who] declares he or she is a registered voter qualified to vote at that precinct but his or her name is not on the official list of eligible voters ("Roster"), that person may vote a provisional ballot."

The Proposed Directive remains as drastically under-inclusive as Directive 2004–33, and is every bit as much in violation of HAVA.

The right to vote provisionally under HAVA is not limited to persons whose names are not on the rolls. That right is also extended to any individual who is told by an election official that he or she "is not eligible to vote." This was one of the fundamental reforms in the right to vote provisionally accomplished under HAVA, and accomplishing this reform was a principal objective of Congress in adopting the Act. Indeed this was the primary response in HAVA to the disenfranchisement in the 2000 presidential election of eligible voters whose names had been improperly stricken from election rolls.[1]

By not even mentioning this group—the primary beneficiaries of HAVA's provisional voting provisions—Blackwell apparently seeks to accomplish the same result in Ohio in 2004 that occurred in Florida in 2000.

Section 15482(a)(3) of HAVA states, further, that "an election official at the polling place shall transmit" the provisional ballot "to an appropriate State or local election official for prompt verification" of the vot-

---

1. This landmark legislation will help the Nation avoid another debacle like the one that occurred during the Presidential election in November of 2000. In that election, thousands of ballots in Florida and in my home State of Illinois went uncounted for a variety of reasons. In fact, over 120,000 voters in Cook County and thousands more throughout the rest of the State did their civic duty and cast a vote during the last Federal election, only to have their ballots discounted because of problems with machinery and inaccuracies on the rolls of registered voters. This is unacceptable in the United States of America, where we take pride in our freedom to cast a vote for our leaders.

148 Cong. Rec. S10488 (daily ed. Oct. 16, 2002) (Statement of Sen. Durbin)

er's eligibility. Section 15482(a)(4) states that "[i]f the appropriate State or local election official to whom the ballot or voter information is transmitted ... determines that the individual is eligible under State law to vote, the individual's provisional ballot *shall be counted* as a vote in that election in accordance with State law." (Emphasis added).

As these two provisions make clear, under HAVA the time to determine eligibility is *after, not before* a vote is cast. Blackwell's Proposed Directive does not acknowledge this fact.

By omitting to inform election officials that they must permit persons to vote provisionally even when they believe such persons are not eligible to vote, Blackwell's proposed directive would disenfranchise all such individuals. Such disenfranchisement would occur, moreover, as a result of eligibility to vote being determined at the wrong time, at the wrong place, and by the wrong election official.

The Proposed Directive, moreover, fails entirely to instruct Ohio's election officials about one of their fundamental obligations under HAVA: namely, that under § 15482(a)(1), "[a]n election official at the polling place *shall notify the individual* [who is not on the rolls, or who is told that he or she is not eligible to vote] *that the individual may cast a provisional ballot.*" (Emphasis added).

Instead of reciting this clear, unequivocal mandate, which is fundamental to full exercise of the right to vote provisionally, Blackwell obfuscates: "No voter should be turned away from the polling place without being given an opportunity to cast a vote; however, all efforts should be made to direct the voter to the proper

precinct, ..., in order for his or her vote to be counted."

This is not the same as telling every voter entitled to vote provisionally, as § 15482(a)(1) so plainly and clearly requires, that he or she is entitled to do so. Not turning someone away is simply not the same as telling them he or she has a right to vote provisionally.

Finally, the Proposed Directive treats this Court's determination that HAVA permits county-wide, rather than just "home" precinct provisional voting in federal elections as though that decision had not been reached: "Provisional balloting as mandated by HAVA does not, ..., alter Ohio's long-standing precinct based voting system...." and "if a person declares he or she is a registered voter qualified to vote *at that precinct,* but his or her name is not on the official list ...", that person *may vote a provisional ballot.*

That is not what this Court concluded, or what, in light of that conclusion, the defendant was to state in his Proposed Directive.[2] His failure to submit a Proposed Directive that reflected my ruling on that issue is inexplicable.

The Proposed Directive states, moreover, that "*all* efforts should be made to direct the voter to the proper precinct, the board of elections, and any regional centers designated by the board of elections, in order for his or her vote to be counted." (Emphasis added). This statement directly contradicts the command of the injunction, as it instructs county election officials, at least be implication, if not directly, not to count ballots that, pursuant to this Court's order, are to be counted.

Even a cursory review of the defendant's Proposed Directive makes clear

that, like Directive 2004–33, the Proposed Directive fails in general and in detail to comply with HAVA. Like Directive 2004–33, the Proposed Directive in general *does not mention, discuss, or explain any provision of HAVA.* Its failure to do so, which appears flagrant, makes impossible for the Proposed Directive under any circumstance be deemed to comply with this Court's Order.

Ignoring this Court's clear command is one thing: it is another thing, and under the circumstances even more blameworthy, to leave Ohio's election officials utterly without guidance about how to apply HAVA's provisions.

As submitted the Proposed Directive simply covers in part, and in shorter form, what was covered in Directive 2004–33: namely, a description of provisional voting under Ohio's pre-HAVA law. There is simply no discussion of the statute, although the Order clearly directed the defendant to "prepare, and, not later than 4 p.m., Monday, October 18, 2004, file with this Court a Directive that complies with the Help America Vote Act."

As seriously, the Proposed Directive fails in many details to comply with HAVA by not instructing Ohio's election workers about their duties under HAVA. Among the crucial, but omitted details are: the mandatory obligation to inform voters of the right to vote provisionally and the duty to provide provisional ballots to all persons covered by the statute, and not just to persons whose names are not on the rolls.

By way of response to my concerns, which were expressed during a telephone conference on October 19, 2004, about the inadequacies of Blackwell's submission, his counsel stated that Blackwell believed that he had complied with the Order, had sought to avoid confusion, and would not be filing anything further. During a section-by-section review of HAVA's provisions, counsel also acknowledged that *he*

saw nothing that was confusing in the sections of HAVA at issue in this proceeding.

Counsel asked if he could communicate further with Blackwell; he was instructed to inform the Court of the defendant's position by 9:00 a.m., Wednesday, October 20, 2004. In a further telephone conferences, Blackwell's counsel stated that his client was prepared by submit further Proposed Directives by 5:00 p.m. on October 20th.

I informed counsel of the substance of this opinion. and advised him the I would be filing this Order forthwith, so that, hopefully, it and its directive could be included in the Sixth Circuit's review of my initial order and injunction.

In doing so, I hope—and indeed, I know of no other way procedurally that I can do so—to avoid delay in securing review of what I believe to be HAVA-compliant directives. If such directives are not filed *now* in this Court, but are filed here only after final adjudication of that appeal, it may well be too late to prepare and file such directives and have them reviewed by a higher court (in the event my original order is upheld in whole or part). Thus, I am doing all I can to get the text of proposed HAVA-compliant directives before the reviewing court.

This is true, even if Blackwell submits HAVA-compliant directives in accordance with his attorney's representation during the most recent telephone conference. I cannot be confident, in light of the thoroughgoing failure of the Proposed Directive to comply with my order, that Blackwell will, indeed, fulfill his obligation to this court, Ohio's election officials, and Ohio's voters to submit HAVA-compliant directives. Time constraints simply do not permit me to await his further attempts to comply with my orders.

That is not to say that his doing so might not mitigate the consequences of his disobedience of my original order.

This Order would not have been necessary, if Blackwell followed the suggestions that I made in earlier orders in this case about what probably would constitute a HAVA-compliant order. In those portions of those orders, I noted my view (which Blackwell has never disputed, and which he could not dispute on reading HAVA's short, simple, and clear provisional voting provisions) that HAVA is not complex. HAVA is clear, and it can readily and easily be explained to Ohio's election officials by reciting the statute's essentials, and by doing so largely, if not entirely, in the language used by Congress. It is also appropriate to point out that, in the event of inconsistency between HAVA and current Ohio law and past practices under that law, HAVA is controlling.

As submitted, Blackwell's Proposed Directive did none of those things.

I did all I could to give Blackwell my view of a roadmap, rather than marching orders.[3] I did so because it is his job, not mine, to see to it that Ohio's election officials are accurately and fully instructed on their duties, so that they can perform those duties efficiently and effectively.

But Blackwell chose—for reasons that he has not undertaken to explain thus far—to disregard those suggestions. His doing so makes it necessary for this Court to do the job that he should have done.

To that end, I submit the proposed HAVA-complaint orders for review by counsel. It is my present anticipation that, once I have received and considered counsel's suggestions, I will direct Blackwell to distribute the two HAVA-compliant directives, plus his former Directive 2004–33, to Ohio's eighty-eight election boards, along with a cover memorandum.

That memorandum will inform the Election Boards about the uncertainty created by Directive 2004–33 and the pendency of the appeal of this Court's decision. It will explain the three outcomes that are possible on review: affirmance of my order *in toto*, affirmance in part (on the cause of action/applicability of HAVA issue; reversal on the "county-wide" voting issue; or reversal *in toto* ).[4]

The memorandum will also inform the election officials that a directive has been

---

**3.** In my order granting injunctive relief, I stated:

> Most of the necessary guidance that he should be providing to county election officials and precinct poll workers can be taken directly from or presented in a paraphrase of § 15482, which could hardly have been drafted more clearly or succinctly. All that appears to be necessary is to recite when and for whom provisional voting is to be made available, describe the procedures for implementing HAVA, and explain the conflicts between HAVA and prior practices.

(Doc. 26, at 32).

In my order denying the defendant's motion to stay my order that he submit a HAVA-compliant revised directive, I was more explicit (and, I hoped, more encouraging about the relative ease with which Blackwell could comply with the injunction and requirements of federal law):

> With regard to provisional voting, HAVA is remarkably straightforward and succinct. Simply listing its requirements in a manner that would most enhance the comprehension of election officials, and making clear to them that any provisions of Ohio law or prior practices inconsistent with HAVA procedures, as therein described, might suffice. At least it would be a step in the right direction.

(Doc. 35, at 7).

**4.** The parties concur that these appear to be the only three likely outcomes. This case raises, in essence, two issues: 1) whether the plaintiffs can maintain a cause of action (if so, HAVA applies); and 2) whether provisional ballots can be cast on a county-wide or only a precinct-wide basis.

prepared for implementation with regard to each eventuality: one directive to be implemented if there is a complete affirmance, another if there is an affirmance in part/reversal in part, and the other if there is complete reversal.

The other contents of the memorandum, which I expect to be brief, clear, and to the point, will be developed in consultation with counsel, which shall be undertaken forthwith.

In light of the foregoing, it is

ORDERED THAT

1.  Leave be, and the same hereby is granted to the defendant Blackwell to submit HAVA-compliant directives as required by this Court's Order of October 14, 2004, by 5:00 p.m., Wednesday, October 20, 2004;

2.  Pending approval of such directives as the defendant shall submit in accordance with this Order, the defendant Blackwell be, and he hereby is advised, that the attached directives, drafted by the Court, and subject to intervening comment by counsel, shall be transmitted to him for distribution forthwith to Ohio's County Election Boards in accordance with this Order, alternatively, if the defendant Blackwell submits HAVA-complaint directives by the deadline set herein, those directives shall (following review by counsel and amended/approval by this Court) be transmitted to him for distribution forthwith to Ohio's County Election Boards; any such transmission of directives to be accompanied by an appropriate memorandum of explanation, as shall be approved, on review with counsel, by this Court.

So ordered.